## Rice v. Roberson et al.

(Decided February 22, 1929.)

DYSARD & MILLER for appellant.

J. D. ATKINSON, A. V. POLLOCK (guardian ad litem), and CLIFFORD E. SMITH for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

This suit was brought by the appellant against the appellees to quiet his title to lot No. 237 of Collins and Hoffman third addition to the town of Worthington, located in Greenup county. The appellees, with whom are joined the spouses of such as are married, are the children of the appellant and a wife now deceased. Three of them, Virginia Bates, Maggie Roberson, and L. M. Rice, Jr., after traversing certain parts of appellant's petition, asked by a counterclaim that they and their codefendants, Finnie Rice and Clyde Rice, the other two children, and the latter of whom is a minor, be adjudged

the owners of a one-half interest in the lot, and that the lot be sold and the proceeds divided on the ground of the indivisibility of the lot. The court dismissed the petition of the appellant, and awarded the appellees the relief they sought on their counterclaim. From that judgment, this appeal is prosecuted.

Some time prior to September 18, 1918, the appellant sold a lot he owned in Flat Woods. Of the sale price $1,100 was deposited in a bank, and a certificate of deposit was issued on that day to Mr. Rice's wife. He says that this was done for the sake of convenience, as he worked in the railroad yards 12 hours a day, and he did not want to have to lay off in order to get the money on this certificate when he got ready to buy another lot. The appellees say that this money was paid to their mother to salve her feelings over some liaison their father had about that time with another woman, that their father was not working 12 hours a day in the yards, but only 8 hours, as the hours of labor then were under the operation of the railroads by the government, and that his excuse, about not wishing to lay off in order to cash the certificate, was no excuse at all, since he could have, as was done when the new lot was purchased, indorsed the certificate over to the sellers of the lot.

In April, 1919, lot No. 237 above referred to, and on which there was a house, was bought for the sum of $2,000; $1,100 of which was paid by this certificate of deposit. The grantor of the lot was introduced as a witness, and he testified that, on account of the number of lots which he sold in this subdivision, he could not recall how any particular deed was made, except that it was probably made in accordance with the notations he had on an account book covering the sale of the lots in this subdivision, and that on this account book it appeared that this lot was sold to appellant. However, appellees showed that in a number of instances, where the notations on the grantor's account book showed that a lot had been sold to ''A. B.'' when the deed was made, it was made jointly to ''A. B. and Mrs. A. B.'' so that the notations on the grantor's account book are not very helpful. The appellant claims that this deed was made to him as sole grantee. Appellees claim that it was made to the appellant and their mother as joint grantees, and that, on the death of their mother in 1924, intestate, her interest in the lot descended to them. It is a greed that,

after the deed to lot No. 237 was made, it was promptly recorded and returned to appellant. At that time the county clerk was, and still is, J. B. Bates, appellant's son-in-law. After the death of his wife in 1924, appellant moved across the river into Ohio, and later remarried.

Determining to sell the house and lot No. 237 he interested some people by the name of Green in its purchase. They went over to Worthington to look at the house, and then discovered that appellant's children were claiming an interest in it. They and appellant testify that, on their return to Ohio, they informed the appellant of the claim of the children, that appellant became very much exercised about it, and that he stated that he would bring his deed over to the Greens and show them that he was the sole owner of the house and lot. Appellant testifies that he took this deed over to the Greens, showed it to them, and satisfied them that he was the sole grantee named in the deed. The Greens testify that the appellant brought them over some deeds in which he was the sole grantee, and they profess to have then identified one of these deeds as covering the house and lot in question. Their identification is somewhat shaken on cross examination, as appellant had deeds to other property in Worthington, and especially to lots adjoining lot No. 237. Further, the manner in which their testimony was given, especially that of Mr. Green, was not impressive, although probably he may have been goaded by what he conceived to be a too vigorous cross-examination. At all events the negotiations with the Greens were dropped. Appellant claims that some time thereafter, in making a search for his deed to this house and lot among his papers, he discovered that it and some fire insurance policies were missing. His two sons, Finnie Rice and Clyde Rice, were then living with him. He enlisted Finnie's aid in his search for the deed, but it was never found, although the insurance policy later reappeared as mysteriously as it had disappeared. Appellant asserts that his deed was stolen from him, but he unequivocally absolves his son-in-law, J. B. Bates, and his daughter, Bates' wife, of the alleged theft. Appellant also established that a friend of his, while visiting him and his wife one evening, heard appellant's wife admit that the property belonged to Mr. Rice.

The deed to lot 237 was recorded on page 392 of Deed Book 57 in the county clerk's office of Greenup

county. As now recorded, both appellant and his wife appear as the grantees named in the deed. The county clerk, who was the son-in-law of appellant, testified that he recorded this deed himself, and that he recorded the deed exactly as it was written. During the course of appellee's proof a great deal of testimony was taken about the shade of the ink on this page 392 of the Deed Book, whether it was lighter or darker than that on the pages preceding and following the page in question, it being admitted that it was of a different shade. The county clerk offered various reasons for the discrepancy in shade, such as the shifting of the typewriter ribbon, the use of a new ribbon, the writing of this page on one typewriter, whereas the pages preceding and following were written by his deputy on another typewriter he had in his office. But along towards the end of the proof it was discovered from the water mark on this page 392 that the paper of this page was manufactured after the deed purported to have been recorded. It was then that the appellees produced a Mrs. Evans who testified that at times she worked in the county clerk's office, assisting him in his labors, that she had a little boy whom she had to take to the office with her while she worked, and that one time in 1923 while she was working in the county clerk's office this little boy knocked against a deed book, and as it started to fall she grabbed it to keep it from falling, and in doing so tore a page out of the book. The book was a looseleaf book, and the binding post holes were so torn on the sheet she had thus torn that it could not be reinserted in the book. She then asked the county clerk what she should do about it, and he told her to take a like number page out of an unused will book, recopy the torn page, and then insert the will book page so copied in the deed book, and that this she had done. She further stated that the deed she copied on the will book page was copied exactly as it appeared on the torn page. She did not profess, however, to remember what deed it was she copied or, independently of the recopied page, what the contents of the torn page were. It was shown that the water mark in the will book referred to was the same water mark as on the inserted page in the deed book, and that page number 392 was missing from the will book. On the other hand, the appellees' proof, by the evidence of Mrs. Bates, Lark Rice, Jr., and Clyde Rice, was that they had seen the original deed before it

was lost, and that their mother was named as grantee in it as well as their father. So far as the testimony of Mrs. Bates and Lark Rice is concerned, it is shown that in some litigation over the possession of this house between the appellant and Lark Rice, Jr., not here important, Mrs. Bates testified that the property belonged to her father, and that Lark Rice set up no claim to it in that litigation. In this state of the evidence the court held that the appellant had failed to establish that he was the sole owner of the property in question.

After reading all the testimony very carefully, our minds are left in considerable doubt about whether the appellant was the sole grantee in the deed in question, or he and his wife were the grantees. Under familiar law in such a state of case the finding of the chancellor must be accepted. Therefore, in so far as the judgment dismissed the appellant's petition, it will have to be affirmed.

It will be recalled that the answer and counterclaim filed in this case was that of only three out of the four adult children. These adult children so answering did not make their answer a cross-petition against Finnie Rice or their minor brother, Clyde Rice, praying that, as to them as well as their father, the house and lot be sold, and the proceeds divided. No answer or report was ever filed by the guardian ad litem for Clyde Rice. This failure, however, cannot be taken advantage of by appellant to reverse the judgment, in so far as it dismissed his petition, as that was in favor of Clyde Rice. It is obvious though that in this state of the record the court erroneously ordered the property sold and the proceeds divided, since no such relief was asked in any pleading in this record as against Finnie Rice or Clyde Rice, who are with the appellant and the other appellees joint owners of this property. Further, the court erred in declining to adjudge the appellant his curtesy rights in the one-half interest of this property, which the judgment adjudged be-belonged to his wife. Therefore, in so far as the judgment dismissing the appellant's petition is concerned, it is affirmed, but in so far as it did not award the appellant a curtesy interest in his wife's portion of this house and lot, and in so far as it ordered a sale of the house and lot and the proceeds divided, it is reversed for further proceedings in conformity with this opinion.